UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDWARD CONWAY,<br><br>        Plaintiff<br><br>v.<br><br>ROBERT BOSCH TOOL CORPORATION,<br>JOHN DOE 1 and JOHN DOE 2,<br><br>        Defendants | CIVIL ACTION NO. 1:17-CV-00572-JJM-PAS |

**DEFENDANT ROBERT BOSCH TOOL CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

TABLE OF CONTENTS

|  | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| I. BACKGROUND AND TRAVEL | 1 |
| II. STATEMENT OF UNDISPUTED FACTS | 2 |
|     A. The Bosch Model 4100 Table Saw and Component Push Stick | 2 |
|     B. Plaintiff and the Subject Products | 4 |
|     C. The Accident | 4 |
|     D. Plaintiff's Designated Expert | 6 |
| III. ARGUMENT | 8 |
|     A. Summary Judgment Standard | 8 |
|     B. Legal Elements of Plaintiff's Claims | 9 |
|         1. Strict Product Liability | 9 |
|         2. Breach of Warranty | 10 |
|         3. Negligence | 10 |
|     C. All of Plaintiff's Claims Fail as a Matter of Law Because He Lacks Required Expert Testimony | 11 |
|     D. Any Claim Based on Failure to Warn Fails as a Matter of Law on the Additional Ground that No Reasonable Jury Could Conclude that a Failure to Warn was Causally Related to Plaintiff's Injury | 12 |
|     E. Plaintiff's Claim for Breach of Express Warranty Fails as a Matter of Law on the Additional Ground that there is No Evidence any Such Warranty Existed | 13 |
| IV. CONCLUSION | 14 |

TABLE OF AUTHORITIES

**Cases**                            **Page**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 22 (1986) ............................................................9

*Boccasile v. Cajun Music Ltd.*, 694 A.2d 686 (R.I. 1997)....................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................................9

*Elec. Terminal Corp. v. Cessna Aircraft,* 520 A.2d 144 (R.I. 1987) ...................................10

*F.D.I.C. v. Anchor Properties*, 13 F.3d 27 (1st Cir. 1994) ....................................................8

*Hartford Ins. Co. v. General Elec. Co.,* 526 F.Supp.2d 250 (D.R.I. 2007) ........................12

*Mills v. State Sales, Inc.,* 824 A.2d 461 (R.I. 2003) ...................................................1, 10, 11

*Oberlander v. Gen. Motors Corp.,* 798 A.2d 376 (R.I. 2002) .......................................10, 12

*Plouffe v. Goodyear Tire & Rubber Co.,* 373 A.2d 492 (R.I. 1977) .....................................9

*Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.,* 772 A.2d 1056 (R.I. 2001).....................9, 11, 12

*Ralston Dry-Wall Co., Inc. v. U.S. Gypsum Co.*, 740 F.Supp.926
   (D. Rhode Island 1990).................................................................................................10, 13

*Sullivan v. City of Springfield*, 561 F.3d 7 (1st Cir. 2009) ....................................................9

**Statutes**

Fed. R. Civ. P. 56................................................................................................................ 8, 9

R.I. Gen Laws § 6A-2-313..................................................................................................10

Defendant Robert Bosch Tool Corporation ("Bosch") submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## I. BACKGROUND AND TRAVEL.

This is a product liability action arising out of an October 30, 2015 accident. Plaintiff Edward Conway alleges that in the course of using a Bosch Model 4100 table saw and component plastic push stick, he mistakenly contacted the unguarded spinning saw blade with the push stick and the push stick broke into four pieces, one of which punctured the palm of his right hand.

Plaintiff brought suit against Bosch in the Superior Court of Rhode Island on October 19, 2017. Bosch removed the action to this Court on December 11, 2017. The Complaint alleges that the subject push stick was "improperly designed and/or manufactured using inappropriate materials." (Ex. A, Complaint at ¶ 8).[1] The Complaint further alleges that the push stick is defective and unreasonably dangerous. (*Id.* at ¶¶ 12, 22). Plaintiff asserts claims against Bosch for Strict Product Liability (Count I), Breach of Implied and Express Warranty (Count II), and Negligence (Count III).

No matter what theory of liability Plaintiff advances, his claims hinge on the contention that the subject push stick was defective and that the defect caused his injuries. Because the issues of defect and causation involve complex scientific and engineering concepts that are outside the everyday knowledge and understanding of average jurors, expert testimony is necessary. *See Mills v. State Sales, Inc.,* 824 A.2d 461, 468 (R.I. 2003). On August 30, 2018, Plaintiff designated Alfred Carroll, a local carpenter, as his liability expert. As set forth more fully below in the Statement of Undisputed Facts, Mr. Carroll and Plaintiff's Counsel represented on the record during Mr. Carroll's deposition that Mr. Carroll will not offer expert

---

[1] All exhibits are attached to the accompanying Statement of Undisputed Facts.

1

opinions on the issues critical to Plaintiff's claims against Bosch; namely, that the subject push stick is defective and the defect caused Plaintiff's injuries. All discovery closed on November 30, 2018. (Docket No. 10).

In the absence of admissible expert testimony, Plaintiff will be unable to meet his burden of proving that the subject push stick was defective or that a defect caused his injuries. Bosch is therefore entitled to summary judgment on all of Plaintiff's claims. To the extent Plaintiff's claims for Strict Product Liability (Count I) and Negligence (Count III) allege a failure to warn, Bosch is entitled to summary judgment for the additional reason that there is no evidence from which a reasonable jury could conclude a failure to warn was causally related to Plaintiff's injuries. Finally, Bosch is entitled to summary judgment on Plaintiff's Breach of Express Warranty claim for the additional reason that there is no evidence from which a reasonable jury could conclude that any such warranty existed.

## II. STATEMENT OF UNDISPUTED FACTS.

### A. The Bosch Model 4100 Table Saw and Component Push Stick.

On October 30, 2015, Plaintiff Edward Conway was injured while using a Bosch Model 4100 table saw, serial number 204182973 (the "subject table saw") and its component plastic push stick (the "subject push stick"). (Ex. A, Complaint at ¶¶ 5, 6, 7; Ex. B, Plaintiff's Answers to Interrogatories at No. 2; Ex. C, Bosch's Answers to Interrogatories at Nos. 5, 6(e); *see also* Ex. D, Photos of Subject Table Saw; Ex. E, Photos of Subject Push Stick Remnants).

A push stick is a device used to feed a workpiece through the saw blade during certain narrow cutting operations. (Ex. F, Operating/Safety Instructions at 8; *see also* Ex. G, Photo of Exemplar Bosch Model 4100 Push Stick). It is intended to keep the operator's hand away from the saw blade. (Ex. F at 8; Ex. H, Conway Deposition at 24:2-5).

The subject push stick was co-designed by Bosch and P&F Brother Industrial Corp. (Ex. C at No. 6(a)). P&F Brother Industrial Corp. manufactured the subject table saw and subject push stick in April 2012. (*Id*. at No. 4). Bosch purchased the products from P&F Brother Industrial Corp. and distributed the subject push stick as a component part of the subject table saw. (*Id*. at Nos. 4(c) and 6(e)).

The subject table saw, including the component subject push stick, was designed and manufactured in accordance with UL 987, the applicable safety standard. (Ex. C at No. 15; Ex. I, Product Label/UL Mark). Prior to distributing the subject table saw and component subject push stick, Bosch submitted production samples of the saw and push stick to UL for testing and certification, and the products were certified as having met all requirements. (Ex. C at Nos. 16, 17; Ex. I; Ex. J, UL Test Documents).

At the time of purchase, the subject table saw was supplied with various safety features, including, among others, a modular Smart Guard System, a rip fence, Operating/Safety Instructions, and on-product warnings and instructions. (Ex. F at 5, 9-10, 20-22; Ex. K, On-Product Warnings/Instructions; Ex. H at 42:22 – 43:9, 45:11-15, 61:2-12). The modular Smart Guard System consists of the following: (1) a factory installed three position riving knife positioned behind the saw blade, which reduces the likelihood of kickback (the uncontrolled grabbing and throwing of material by the saw blade back toward the operator) and serves as a barrier guard for the rear portion of the blade; (2) a main barrier guard with two side and one top barriers; and (3) a workpiece arresting device called kickback pawls. (Ex. F at 3, 7, 10, 20-22). The rip fence is a workpiece guiding device that runs parallel to the saw blade. (Ex. F at 9-10, 18; Ex. H at 61:11-18; *see also* Ex. L, Re-enactment Stills). The Operating/Safety Instructions and on-product warnings and instructions include warnings and instructions on when the

3

components of the modular Smart Guard System, proper rip cutting operation procedures, and when and how to use work helpers such as a push stick. (Ex. F at 2-5, 12-13, 19-22, 30, 36-37; Ex. K).

The blade speed rating on the subject table saw is 3650 RPM (revolutions per minute). (Ex. I).

### B. Plaintiff and the Subject Products.

Plaintiff claims he purchased the subject table saw and component subject push stick from a Lowe's store in December 2012 or January 2013. (Ex. B at No. 4). Before Plaintiff purchased the products, Bosch did not make any statements or representations to Plaintiff regarding either the table saw or the push stick, nor did Plaintiff rely on any statements or representations made by Bosch when he chose to purchase table saw and component push stick. (Ex. H at 41:19 – 42:2).

To the extent Plaintiff read any portion of the Operating/Safety Instructions before using the subject table saw and component subject push stick, his review was limited to looking at how to bolt the table saw to its stand. (Ex. H at 43:10-20; 43:25 – 44:10; *see also id*. at 46:2-3; 46:22 – 47:14; 48:4-15; 49:1-22; 50:3-15; 51:1-13; 52:24 – 53:15; 57:16 – 59:17). He did not read any of the warnings or instructions affixed to the saw itself. (*Id*. at 47:15-17; 48:2-3; 113:6-8). Indeed, as of the date of his accident, it was not Plaintiff's practice to read the manual for any table saw he used. (*Id*. at 47:18-20). He felt he could safely use a table saw without reading the manual provided with the saw. (*Id*. at 43:21-24).

### C. The Accident.

At the time of the accident, the saw blade was elevated approximately 1" above the table top; the rip fence was set approximately 3/8" to the right of the saw blade; and no part of the

Smart Guard System was present on the subject saw. (Ex. H at 80:4-10; 80:21-25; 81:1-9; 103:6-18; *see also* Ex. L, Re-enactment Stills). The factory installed riving knife was not on the subject saw because it had been physically removed after purchase. (Ex. M, Photos of Removed Riving Knife).

After Plaintiff completed making a non-through rip cut[2] into the length of a 3½ foot long oak stair tread, he used his left hand to move the workpiece to the left side of the tabletop. (Ex. H at 48:19-25; 77:10-13; 79:25 – 80:1, 82: 7-16; 85:18-23; 106:11-13; Ex. B at No. 15). While doing so, he placed the bird's mouth[3] of the subject push stick (which was in his right hand and had been to the right of the blade) on the tabletop to the left of the blade, though he is not certain exactly where on the tabletop to the left of the blade he placed the push stick. (Ex. H at 82:7-25, 106:21 – 107:3; 108:4-6; 109:22 – 110:5; Ex. B at No. 15; *see also* Ex. L). Plaintiff then used his left hand to shut off the power switch that is on the left side of the table saw below the tabletop. (Ex. H at 82:25 – 83:8; 85:18 – 86:3; 108:4-12). Just after hitting the power switch and while he attempted to transfer the subject push stick from the left side of the unguarded blade to the right side of the fence, the push stick contacted the still spinning saw blade. (*Id.* at 83:2-4; 83:12-15; 85:24 – 86:19; 108:7-14; Ex. B at No. 15).

Approximately one second after hitting the power switch, Plaintiff heard a "bang" noise and realized his right hand was injured. (Ex. H at 86:12-19; 108:19 – 109:6). Plaintiff did not see what happened to lead to his injuries, and he does not know where on the saw blade the subject push stick made contact. (*Id.* at 86:4-22; 87:25 – 88:3; 108:15-18; Ex. B at No. 15).

---

[2] A non-through cut is one in which the saw blade does not rise above the workpiece. (Ex. F at 8; Ex. H at 48:19-25).

[3] The "bird's mouth" of a push stick is the portion of the push stick with a rectangular notch. It is the portion that engages with the workpiece as the operator feeds the workpiece through the saw blade. The operator grips the push stick at the opposite end. (*See* Ex. G; Ex. L).

5

The subject push stick broke into four pieces, one of which punctured the palm of Plaintiff's right hand. (Ex. E; Ex. H at 86:12-19). Plaintiff's right hand did not contact the saw blade. (Ex. H at 87:5-11). A first responder to the incident reported to Plaintiff that the four pieces of the subject push stick were found on the floor. (*Id*. at 86:23 – 87:11).

**D. Plaintiff's Designated Expert.**

Plaintiff is represented in this matter by Stephen C. Mackie ("Plaintiff's Counsel"). (Ex. A). On August 30, 2018, Plaintiff designated Alfred Carroll, a local carpenter, as his sole liability expert. (Ex. N, Plaintiff's Expert Witness Disclosure List at ¶ 2). Mr. Carroll and Plaintiff's Counsel have a history together. Mr. Carroll has performed repair and remodeling work for Plaintiff's Counsel, and Plaintiff's Counsel has defended Mr. Carroll in legal matters. (Ex. O, Carroll Deposition at 11:21 – 12:16).

On August 30, 2018, Plaintiff also produced a document entitled Testimony of Alfred Carroll. (Ex. P, Testimony of Alfred Carroll). The document was signed by Mr. Carroll and purportedly set forth his opinions concerning Plaintiff's actions on the day of the accident; whether or not Plaintiff was negligent or approached the project in a safe manner; the design and performance of the subject push stick; the manual that accompanied the subject table saw; the way in which the subject push stick interacted with the saw blade; and how and why the push stick broke. (*Id*.)

On November 20, 2018, Bosch deposed Mr. Carroll. (Ex. O, Carroll Deposition generally). Bosch learned that Mr. Carroll did not prepare an expert report in this case. (*Id*. at 15:7-9). Instead, Plaintiff's Counsel prepared the document entitled Testimony of Alfred Carroll. (*Id*. at 17:12-16). Mr. Carroll signed the document as Plaintiff's Counsel presented it to him; he did not review any drafts or make any changes to the document. (*Id*. at 16:3-6; 17:17-

6

19). Mr. Carroll signed the document after only a brief review – as long as it took him to read it. (*Id*. at 16:7-8).

Mr. Carroll testified that the document entitled Testimony of Alfred Carroll "absolutely" represents Plaintiff's Counsel's explanation of the accident, **not his own**. (Ex. O at 16:23 – 17:1; 18:5-11). Mr. Carroll did not perform an accident reconstruction and does not know how Plaintiff's accident happened. (*Id*. at 18:10-11; 24: 4-9; 34:9-11). He did not watch the video re-enactment Plaintiff performed at his deposition, he did not read Plaintiff's deposition testimony, and he has never spoken to Plaintiff about his accident. (*Id*. at 27:5-6; 33:14; 84:2-6; 87:4-5; 87:12-16). Mr. Carroll's sole understanding of Plaintiff's accident comes from what Plaintiff's Counsel told him. (*Id*. at 33:15-16; 83:23 – 84:1).

The following was also established at Mr. Carroll's deposition:

Mr. Carroll will <u>not</u> offer an expert opinion that the subject push stick was defective in design or manufacture. (Ex. O at 19:20 – 20:3). Indeed, Plaintiff's counsel acknowledged that Mr. Carroll is not an expert as to the material composition of the subject push stick or its physical capabilities. (*Id*. at 38:10-12). Mr. Carroll will <u>not</u> offer an expert opinion that the subject push stick is unsafe for its intended use; that it is unreasonably dangerous for its intended use; or that it creates a strong likelihood of injury during normal use. (*Id*. at 22:23 – 24: 3).

Mr. Carroll will <u>not</u> offer an expert opinion as to how the subject push stick should have been designed or that a differently designed push stick would have prevented Mr. Conway's accident. (Ex. O at 24:15-20; 97:10-15).

Mr. Carroll will <u>not</u> offer an opinion that Bosch was negligent with respect to the subject push stick; that Bosch deviated from any standard of care in the industry with respect to the

subject push stick; or that the subject push stick violated any industry standards. (Ex. O at 20:14-24).

Mr. Carroll will <u>not</u> offer an opinion regarding how the accident happened. (Ex. O at 34:12 – 35:2; 39:2- 40:17). He will <u>not</u> offer an expert opinion as to where the push stick first contacted the blade or how the push stick interacted with the blade. (*Id*. at 41:18-24; 84:25 – 85:13). He will <u>not</u> offer an expert opinion as to whether the riving knife would have prevented the push stick from contacting the blade. (*Id*. at 41:25 – 42:18). Mr. Carroll acknowledged that how the push stick broke, why it broke, and the way in which it interacted with the blade are issues for someone with a science and engineering background to determine. (*Id*. at 88:18-25).

Mr. Carroll will <u>not</u> offer any expert opinions that the warnings provided with the subject table saw and component subject push stick were inadequate. (Ex. O at 96:4-14).

By the end of Mr. Carroll's deposition, Plaintiff's Counsel represented on the record that Mr. Carroll will not offer an expert opinion at trial on any of the matters addressed in the document entitled Testimony of Alfred Carroll, with the exception of the opinion that a push stick is a safety device. (Ex. O at 96:17 – 97:9; *see also id.* at 22:13-18; 31:14 – 33:11; 36:18 – 37:7; 96:14-16).

**III. ARGUMENT.**

   **A. Summary Judgment Standard.**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which has the potential to affect the outcome of the suit. *F.D.I.C. v. Anchor Properties*, 13 F.3d 27, 30 (1st Cir. 1994).

Once the moving party has properly made the motion for summary judgment, the burden shifts to the opposing party to set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). If the moving party demonstrates that there is an absence of evidence to support the non-moving party's case, then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). To avoid summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 22, 252 (1986). Furthermore, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment. *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009).

### B. Legal Elements of Plaintiff's Claims.

Plaintiff asserts claims against Bosch for Strict Product Liability (Count I), Breach of Implied and Express Warranty (Count II), and Negligence (Count III).

#### 1. Strict Product Liability.

To recover under a theory of strict product liability, Plaintiff must establish, among other elements: (1) a defect in design or manufacture that makes the subject product unreasonably dangerous for its intended use, meaning there is a strong likelihood of injury during normal use, and (2) the defect proximately caused his injuries. *See Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.,* 772 A.2d 1056, 1063 (R.I. 2001). Simply establishing that use of the product resulted in injury will not satisfy Plaintiff's burden. *See Plouffe v. Goodyear Tire & Rubber Co.,* 373 A.2d 492, 496 (R.I. 1977) ("[t]he mere fact of a tire blowout does not tend to establish that the tire was defective").

### 2. Breach of Warranty.

To recover for a breach of implied warranty of merchantability, Plaintiff must establish, among other elements, that: (1) the subject product is defective, and (2) the defect is the proximate cause of his injuries. *See Oberlander v. Gen. Motors Corp.,* 798 A.2d 376, 379 (R.I. 2002). Again, the mere happening of an occurrence is not sufficient to satisfy Plaintiff's burden. *Elec. Terminal Corp. v. Cessna Aircraft,* 520 A.2d 144, 146 (R.I. 1987).

To recover for a breach of express warranty, Plaintiff must establish, among other things that: (1) statements or representations made by Bosch about the subject product induced him to purchase the subject product; and (2) he relied on such statements or representations. *See Ralston Dry-Wall Co., Inc. v. U.S. Gypsum Co.*, 740 F.Supp. 926, 929 (D. R.I. 1990); *see also* R.I. Gen Laws § 6A-2-313. Of course, Plaintiff must also establish that a defect attributable to Bosch was the proximate cause of his injury. *See Oberlander v. Gen. Motors Corp.,* 798 A.2d 376, 379 (R.I. 2002).

### 3. Negligence.

To recover under a theory of negligence, Plaintiff must establish, in addition to damages, (1) a legally cognizable duty owed by Bosch to Plaintiff; (2) a breach of that duty; and (3) proximate causation between Bosch's conduct and Plaintiff's injuries. *See Mills v. State Sales, Inc.,* 824 A.2d 461, 467 (R.I. 2003). In order to establish a duty and a breach of duty, Plaintiff must first establish the applicable standard of care and then show that Bosch violated that standard. *Id.* at 469. There is no duty to provide an accident-proof, perfect, or foolproof product.

In a negligent design claim such as the one at bar, a defendant can only be liable in negligence if the plaintiff establishes that the defendant knew, or had reason to know, of a

defective design or that it was negligent in failing to test or inspect the product prior to sale. *See Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.,* 772 A.2d 1056, 1063 (R.I. 2001). Furthermore, a plaintiff still must prove that any design defect was the actual and proximate cause of the injuries. *Id.*

### C. All of Plaintiff's Claims Fail as a Matter of Law Because He Lacks Required Expert Testimony.

While Plaintiff has brought a variety of claims against Bosch, each one is premised on an unspecified but alleged defect in the subject push stick. As outlined above, in order to sustain his burden of proof on each of his theories of liability, Plaintiff at the outset must demonstrate that the subject push stick was defective and that the defect was the actual and proximate cause of his injuries.

It is equally well established that expert testimony is required for any matter that is not obvious to a layperson, and thus lies beyond common knowledge. *Mills v. State Sales, Inc.,* 824 A.2d 461, 468 (R.I. 2003) (internal citations omitted); *see also Boccasile v. Cajun Music Ltd.*, 694 A.2d 686, 690 (R.I. 1997).

The issues of product defect and causation presented by the instant case involve complex scientific and engineering concepts that are outside the everyday knowledge and understanding of average jurors. It is undisputed that the subject table saw and its many component parts, including the subject push stick met the applicable industry safety standards and were approved by UL. (*See* Section II.A. above; *see also* Ex. C at Nos. 15-17; Ex. I; Ex. J). It is also undisputed that Plaintiff's accident, which he did not actually see happen, was a dynamic event involving a rapidly spinning saw blade and the near presence or absence of select safety features (the rip fence and riving knife, respectively). (*See* Section II.C. above). It is far from obvious to a layperson, though, how the subject push stick interacted with the blade, the rip fence, and

11

Plaintiff; what role the absence of the riving knife played in Plaintiff's accident; what forces the subject push stick encountered; how the subject push stick broke; and why it broke. Mr. Carroll conceded as much. (*See* Section II.D. above generally; *see also* Ex. O at 88:18-25). Without expert testimony, jurors would be forced to speculate as to the existence of any defect and the true cause of Plaintiff's injuries. Such speculation is impermissible under the Federal Rules, and expert testimony is required. *Hartford Ins. Co. v. General Elec. Co.,* 526 F.Supp.2d 250, 254, 260 (D. R.I. 2007) (Smith, J.).

Critically, Plaintiff has not come forth with admissible expert testimony to sustain his burden of proving defect or causation. (*See* Section II.D. above). In the absence of admissible expert testimony, all of Plaintiff's claims must fail. *See Hartford Ins. Co. v. General Elec. Co.,* 526 F.Supp.2d 250 (D. R.I. 2007) (Smith, J.) (granting summary judgment for defendant on multiple product liability claims in the absence of admissible expert evidence that the alleged defect in the subject product was the proximate cause of a house fire); *Oberlander v. Gen. Motors Corp.,* 798 A.2d 376, 379 (R.I. 2002) (affirming directed verdict for defendant on breach of warranty claim given lack of admissible expert testimony that subject product was defective); *Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.,* 772 A.2d 1056, 1063 (R.I. 2001) (affirming grant of judgment as a matter of law on negligent design claim in absence of expert testimony that defendants had not complied with the applicable standard of care in either designing or testing the subject product).

### D. Any Claim Based on Failure to Warn Fails as a Matter of Law on the Additional Ground that No Reasonable Jury Could Conclude that a Failure to Warn was Causally Related to Plaintiff's Injury.

To the extent Plaintiff's claims for strict liability and negligence allege a failure to warn, Bosch is entitled to summary judgment for the additional reason that there is no evidence from

which a reasonable jury could conclude that a failure to warn was causally related to Plaintiff's injury.

This is so because the undisputed evidence establishes that to the extent Plaintiff read any portion of the Operating/Safety Instructions before using the subject table saw and component subject push stick, his review was limited to looking at how to bolt the table saw to its stand. (Ex. H at 43:10-20; 43:25 – 44:10). Further, Plaintiff did not read any of the warnings or instructions affixed to the saw itself, and it was never his practice to read the manuals provided with the table saws he used. (*Id*. at 47:15-20; 48:2-3). Indeed, as of the date of his accident, Plaintiff felt he could safely use a table saw without reading the manual. (*Id*. at 43:21-24). Given these facts, no reasonable jury could conclude that Plaintiff would have read any additional warnings or that the absence of additional warnings was causally related to his injury.

### E. Plaintiff's Claim for Breach of Express Warranty Fails as a Matter of Law on the Additional Ground that there is No Evidence any Such Warranty Existed.

Bosch is entitled to summary judgment on Plaintiff's claim for breach of express warranty for the additional reason that there is no evidence any such warranty existed. The undisputed evidence establishes that Bosch did not make any statements or representations to Plaintiff regarding either the subject table saw or the component subject push stick before Plaintiff purchased the products, nor did Plaintiff rely on any statements or representations made by Bosch when he chose to purchase the products. (Ex. H at 41:19 – 42:2). In the absence of representations and reliance, no express warranty exists and Plaintiff's claim fails as a matter of law. *See Ralston Dry-Wall Co., Inc. v. U.S. Gypsum Co.*, 740 F.Supp.926, 929 (D. R.I. 1990) (granting summary judgment on breach of express warranty claim where defendant did not make any statements of fact or promises to plaintiff and plaintiff did not rely on any such statements).

## IV. CONCLUSION.

For the foregoing reasons, Defendant Robert Bosch Tool Corporation respectfully requests that the Court grant its Motion for Summary Judgment and enter final judgment in its favor.

DEFENDANT,
ROBERT BOSCH TOOL CORPORATION

By its attorneys,

*/s/ Andrea Studley Knowles*
Andrea Studley Knowles (*pro hac vice*)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, Suite 900
Boston, Massachusetts 02114
(617) 227-3030 (Tel.)
(617) 523-4001 (Fax)
knowles@sugarmanrogers.com

and

*/s/ Mitchell R. Edwards*
Mitchell R. Edwards (#6942)
Hinckley Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000 (Tel.)
(401) 277-9600 (Fax)
medwards@hinckleyallen.com

DATED: January 31, 2019

## **CERTIFICATE OF SERVICE**

I certify that on January 31, 2019 I electronically filed the foregoing document and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Andrea Studley Knowles*
Andrea Studley Knowles (*pro hac vice*)

4850-9625-9462, v. 2