UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDWARD CONWAY,<br>    Plaintiff,<br><br>v.<br><br>ROBERT BOSH TOOL<br>CORPORATION, JOHN DOE 1 and<br>JOHN DOE 2,<br>    Defendants. | C.A. No. 17-572-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Edward Conway is a former union carpenter with decades of experience running various power tools. Mr. Conway suffered serious injuries to his right hand while using a Bosch Model 4100 table saw and its component push stick, designed, manufactured, and sold by defendant Robert Bosch Tool Corporation (Bosch). The push stick Mr. Conway was using broke into pieces when it inadvertently contacted the spinning blade of the saw, one of which punctured his hand. Mr. Conway at first sued in the Kent County Superior Court of Rhode Island before Bosch removed the case to this Court. ECF No. 4 at 2. Mr. Conway brings claims of strict products liability, negligence, and breach of implied and express warranties. Bosch moved for summary judgment of all of Mr. Conway's claims and, for these reasons, the Court GRANTS Bosch's Motion for Summary Judgment. ECF No. 13.

I. BACKGROUND

The Bosch Model 4100 table saw is a portable power tool designed, manufactured, and marketed by Bosch. The saw exerts tremendous force during use, creating a danger that material being fed through the saw blade will kick back toward the user. Kickback occurs when the material binds between the saw blade and the rip fence[1] or any other fixed object. To minimize the risk posed to the user, Bosch sells the table saw along with safety devices, including a detailed operator's manual, a Smart Guard system, and a push stick. The various components of the Smart Guard system[2] are designed to prevent the kickback of material being pushed through the saw. The push stick is intended to take the place of the user's hand during operations in which the hand would pass within 6 inches of the saw blade.

The table saw and push stick were, at the time of manufacture, subject to Underwriters' Laboratories (UL) Standard 987. UL tested exemplars of the table saw and push stick and found them to comply with the applicable standard that, *inter alia*, examined the material composition of the push stick, its length, its angular orientation, and its ability to withstand a specified amount of force. Bosch performed internal tests of the push stick as well to ensure it met standards for flexibility,

---

[1] The rip fence is a straight, fixed bar that runs parallel to the saw blade, to aid in achieving a square, straight cut. Material is pushed between it and the sawblade during many operations.

[2] The Smart Guard system includes a barrier guard device (blade cover), anti-kickback pawls, and an adjustable three position riving knife. It is unclear from the record exactly how much of the Smart Guard system could have been used during the cutting operation Mr. Conway undertook. But the record is clear that no aspect of the Smart Guard system was in use when his injuries occurred.

strength, and ergonomics. Engineers at Bosch used the push stick to guide several thousand feet of material through the saw during which testing the push stick contacted the blade of the saw.

Mr. Conway was using the push stick sold with his table saw while performing a task that would have brought his hand within 6 inches of the saw blade. He completed the cut without incident, placed the finished piece of material to the left of the saw and turned the power switch to the off position. Then he tried to set the push stick, still in his right hand, down on the right side of the saw. As Mr. Conway passed the push stick over the still spinning blade of the saw the two made contact. The blade grabbed the push stick and forced it between the blade and the rip fence. The kick back force created when the push stick became bound between the blade and the rip fence caused it to bow and then break into several pieces, one of which punctured Mr. Conway's hand.

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery and disclosure materials on file, affidavits, and any other admissible material in the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To determine whether summary judgment is suitable, the court analyzes the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

The burden falls first on the movant to aver an absence of genuine issue of material fact which requires resolution at trial. *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (Citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden then shifts to the nonmovant who must oppose the motion by presenting facts to show a genuine issue of material fact remains. *Id.* A factual issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it holds the power to "sway the outcome of the litigation under applicable law." *Nat'l Amusements*, 43 F.3d at 735. The nonmovant must rely on more than "effusive rhetoric and optimistic surmise" to establish a genuine issue of material fact. *Cadle*, 116 F.3d at 960. Rather, the evidence relied on by the nonmovant "must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Nat'l Amusements*, 43 F.3d at 735 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

## III. DISCUSSION

Mr. Conway asserts claims against Bosch for strict products liability, negligence, and breach of implied and express warranty. Because the same evidentiary deficiency undermines Mr. Conway's allegations of strict products liability and breach of the implied warranty, the Court will discuss those theories together before taking up his remaining claims individually.

A. Strict Products Liability and Breach of Implied Warranty

Common to Mr. Conway's strict products liability and breach of the implied warranty of merchantability claims is the burden to prove a defect in the product and that the proven defect is the proximate cause of the plaintiff's injury. *See Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985) ("In a strict liability action, the plaintiff has the burden of proving a defect in the design or manufacture that makes the product unsafe for its intended use, and also that the plaintiff's injury was proximately caused by this defect"); *Plouffe v. Goodyear Tire & Rubber Co.*, 373 A.2d 492, 496 (R.I. 1977) (stating that the correct rule is "in a claim for breach of warranty the burden is on plaintiffs to prove that the product is defective, that it was in a defective condition at the time it left the hands of the seller, and that said defect is the proximate cause of the injury"). A plaintiff may rely on circumstantial evidence to arouse the inference of a defect. *See, e.g., King v. Staples, Inc.*, No. C.A. 06-258S, 2008 WL 3895574, *10 (D.R.I. Aug. 22, 2008). But a mere showing that "use of the product resulted in injury will not satisfy the burden." *Olshansky v. Rehrig Int'l*, 872 A.2d 282, 287 (R.I. 2005), *abrogated on other grounds by Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446 (R.I. 2013).

1. Design Defect

Mr. Conway postulates that the push stick included with the table saw suffers from a defective design. Bosch argues that expert testimony is necessary to prove the existence of a design defect where the facts are too esoteric or complex to be

5

understood by a lay person. *See Mills v. State Sales, Inc.*, 824 A.2d 461, 468 (R.I. 2003).

While Bosch correctly describes the requirements of Rhode Island law, it is equally well settled that Mr. Conway may prove his case by presenting circumstantial evidence, especially if it shares indicia of scientific reliability. *See King* 2008 WL 3895574 at *10 (finding independent testing results, subsequent design changes, similar accidents in the same product line, "Field Fix[es]," and notice to customers sufficient to support an inference of defect); *see also Mills*, 824 A.2d at 468 (noting an absence of an experts' affidavits or "other appropriate scientific evidence" to support a claim). Since Mr. Conway does not rely on expert testimony to prove the alleged defect, the Court will evaluate the indirect evidence he evinces to determine the validity of his claim without reaching whether expert testimony is indispensable here.

A review of the record reveals a paucity of evidence, circumstantial or otherwise, to support Mr. Conway's theory of design defect. The record supports that Mr. Conway was moving the push stick from one side of the saw to another after finishing a non-through cut; that while Mr. Conway was repositioning the push stick it contacted the spinning blade of the saw; that contact with the blade caused the push stick to lodge between the blade and the rip fence of the saw; and that the resulting force applied to the push stick caused it to break and a piece of it to be lodged in Mr. Conway's hand. ECF No. 20-3 at 7-13. What is missing from the record, however, is any evidence tending to prove that the occurrence described above is

related in any way to a defect in the design of the push stick. Mr. Conway offers no feasible alternative design that may have been safer or in use by other manufacturers.[3] He offers no evidence of a pattern of similar injuries caused by the same push stick. He offers no evidence that industry or independent testing revealed a propensity for the push stick to break in the way it did when he was injured. Although an expert could help cure these evidentiary deficiencies, Mr. Conway may have been able to marshal enough circumstantial evidence to support the inference of a design defect without one.

Mr. Conway has failed to either offer an expert or prove a circumstantial case of product defect. The record is clear that he has not met his burden and a jury could only rely on impermissible conjecture to determine that the push stick was defective. *See Geremia v. Benny's Inc.*, 383 A.2d 1332, 1334 (R.I. 1978) (finding that no reasonable jury could find for the plaintiff where there was not sufficient evidence of a defective product).

---

[3] Mr. Conway suggests that a wooden push stick would not have broken the same way when it met the force of the spinning blade of the saw. However, he cannot explain how or why that would be the case. Relying as he does on the deposition of Bosch's expert, who testified that a wooden push stick would be susceptible to a different but still dangerous type of fracture under the same force, the Court can only conclude that Mr. Conway's proposed alternative design is underdeveloped at best. What is more, the operator's manual for the table saw included instructions for making a push stick out of wood, which shows that Mr. Conway had the opportunity to use a wooden push stick if he so desired and that a wooden push stick is contemplated and included in the design of the saw.

### 2. Proximate Cause

Even if a jury could infer from circumstantial evidence that Bosch's push stick design was defective, it would still be left to speculate whether the defect was the proximate cause of Mr. Conway's injury. *See Thomas*, 488 A.2d at 722 (requiring a causal nexus between the alleged defect and the plaintiff's injury). Mr. Conway has not provided a reconstruction of the event establishing the causal nexus between the alleged defect and his injury.[4] His own recollection of the accident is merely that he was moving the push stick from one side of the saw to another, heard a bang, and discovered he was injured. Mr. Conway simply has not produced enough evidence to raise a genuine issue of fact about the cause of his injury.

### B. Negligence

To prevail in his claim of negligent design, Mr. Conway must prove that "that the defendant[s] knew, or had reason to know, of a defective design or that [they] w[ere] negligent in failing to test or inspect the product prior to sale." *Raimbeault v. Takeuchi Mfg. (U.S.), Ltd.*, 772 A.2d 1056, 1063 (R.I. 2001) (quoting *Thomas*, 488 A.2d at 721). To prove negligent failure to test or inspect a product, Mr. Conway must put forth credible evidence that Bosch deviated from an established standard of care. *See Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I. 1980).

---

[4] Mr. Conway seeks to rely on Bosch's expert reconstruction of the events leading up to his injury. Bosch stridently objects to the "commandeering" of its expert. ECF No. 20 at 4. The Court, however, declines to resolve this dispute as it is irrelevant considering Mr. Conway's inability to prove the existence of a design defect.

Mr. Conway has not produced evidence sufficient to allow a reasonable jury to conclude that Bosch did not uphold the standard of care. His theory of negligence rests on the assertion that Bosch did not test the push stick to determine how it would react if it contacted the spinning blade of the table saw. However, Bosch did subject the push stick to external testing by UL, which sets industry standards for power tool safety, and conducted its own internal testing. ECF No. 16-2 at 5-8. Mr. Conway has set forth no evidence that Bosch did not follow the applicable standard of care or that the current standard of care is inadequate. *See Boccasile v. Cajun Music Ltd.*, 694 A.2d 686, 691 (R.I. 1997) (upholding summary judgment where plaintiff presented no evidence establishing a standard of care or deviation from that standard); *see also Scittarelli*, 415 A.2d at 1044 (upholding a directed verdict for the defendant when the plaintiff provided neither "evidence of...customary practices in the industry or past practices of defendant" nor "expert testimony [of] an industrywide standard of care."). Without evidence establishing specific testing requirements that Bosch did not meet, a jury could only speculate as to Bosch's negligence; this the jury may not do. *See Thomas*, 488 A.2d at 722.

Furthermore, since Mr. Conway cannot point to evidence that Bosch should have tested its product differently, the jury could not reasonably infer that Bosch's alleged negligence was the cause of his injuries. Any negligence on the part of Bosch premised on its failure to test the push stick could only be the cause of Mr. Conway's injuries if testing according to the proposed standard of care (which plaintiff has not established) would have revealed a defect in the product that the defendant failed to

correct or warn users about and the defect in fact caused his injuries. *See id.* Mr. Conway has not offered any evidence that different or more extensive testing would have revealed the alleged defect. Instead he relies solely on the mere happening of the accident to prove that a defect was the proximate cause of his injuries. Such a showing will not suffice to survive a motion for summary judgment. *See Scittarelli*, 415 A.2d at 1044 ("[t]he fact of the occurrence alone is inadequate proof of improper inspection and testing.")

### C. Failure to Warn

Mr. Conway's theory of negligence or products liability premised on failure to warn is doomed by the same dearth of evidence. Under strict liability, Bosch has a duty to warn of a danger that is reasonably foreseeable. *See Raimbeault*, 772 A.2d at 1064. In negligence, Bosch has a duty to warn if it knew or had reason to know of the dangerous propensities of the product which caused Mr. Conway's injuries. *See id.* at 1063-64. Regardless of the sobriquet accompanying the cause of action, the duty to warn is "measured...by the same standard." *DiPalma v. Westinghouse Elec. Corp.*, 938 F.2d 1463, 1466 (1st Cir. 1991); *see also Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782 (R.I. 1988). "Incident to this duty to warn is a duty to acquire knowledge about the products through reasonably adequate inspections and tests." *Scittarelli*, 415 A.2d at 1043.

Mr. Conway has not met his burden of proving that Bosch did not use reasonable care to discover the potential dangers of using the push stick. As noted above, Mr. Conway has offered only the bald assertion that Bosch should have tested

10

the push stick differently. He has advanced no alternative testing or inspection standard, nor has he adduced any evidence that a standard different from that employed by Bosch would have revealed a latent defect in the push stick. *See id.* Without this crucial evidence, Mr. Conway cannot establish that Bosch negligently did not acquire knowledge of the danger lurking within the push stick about which it had a duty to warn.

### D.    Breach of Express Warranty

Mr. Conway's claim of breach of express warranty arises from R.I. Gen. Laws § 6A-2-313, which provides: "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a basis of the bargain...[or] any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform...." R.I. Gen. Laws § 6A-2-313(1)(a)-(b). Furthermore, Rhode Island law places the burden on the plaintiff to prove that such statements by the seller induced the plaintiff's purchase of the goods in question and that the plaintiff relied on the seller's statements. *Ralston Dry-Wall Co. v. U.S. Gypsum Co.*, 740 F. Supp. 926, 929 (D.R.I. 1990), *aff'd*, 926 F.2d 99 (1st Cir. 1991).

Mr. Conway offers no evidence that he was induced by or relied on any statements or representations made by Bosch when he bought the table saw and push stick. To the contrary, Mr. Conway responded with a simple "No" when asked by opposing counsel during his deposition if "Bosch [made] any statements of fact or promises to [him] that related to the table saw or push stick?" ECF No. 14-8 at 5. Similarly, Mr. Conway answered "No" when opposing counsel asked whether he had

11

"rel[ied] on any statements or representations from Bosch before [he] purchased the saw." *Id.* Considering Mr. Conway's admissions during his deposition and the absence of any other evidence showing the existence of an express warranty, no reasonable jury could find Bosch liable for breach.

IV. CONCLUSION

Mr. Conway has not presented enough evidence to raise a genuine issue of material fact about crucial elements of each his claims. Consequently, all of Mr. Conway's claims must fail and the Court GRANTS Bosch's Motion for Summary Judgment. ECF No. 13.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 8, 2019