UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EDWARD CONWAY,<br>    Plaintiff,<br><br>v.<br><br>ROBERT BOSH TOOL<br>CORPORATION, JOHN DOE 1 and<br>JOHN DOE 2,<br>    Defendants. | C.A. No. 1:17-CV-00572-JJM-PAS |

**MEMORANDUM O F LAW IN SUPPORT OF MOTION FOR PARTIAL
RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Now comes Plaintiff, Edward Conway, by and through undersigned counsel, and hereby files this Memorandum of Law in Support of his Motion for Partial Reconsideration of Order Granting Defendant's Motion for Summary Judgment (ECF 21). Pursuant to Rules 59(e) and 60 of the Federal Rules of Civil Procedure, the Plaintiff hereby requests that the Court alter and amend its May 8, 2019 Judgment (ECF 22) to deny the Defendant's Motion for Summary Judgment (ECF 13) as to the Plaintiff's design defect and failure to warn theories supporting Count I for Strict Liability and Count III for Negligence.

### I.    INTRODUCTION

This is a case about a Plaintiff who is a retired carpenter and who has effectively lost the use of his predominant (right) hand as a result of an injury that occurred through the intended use of Defendants' product and which injury was occasioned by Defendants' negligence and failure to warn. Perhaps due to Plaintiff's failure to sufficiently focus the Court's attention, Plaintiff respectfully suggests that the Court erred when it granted Defendant's Motion for Summary Judgment (ECF 13) in its entirety. More specifically, in finding that the Defendants adequately

1

tested the subject saw (and, in particular, the push stick that injured Plaintiff's hand) and concluding that Defendants were not negligent, the Court erred.  Despite the fact that Defendants were aware of the foreseeability of the occurrence that caused Plaintiff's injury and had received at least six complaints of the same nature, Defendants simply failed to specifically test for the consequences of the push stick coming into contact with the saw blade even though the push stick exists and is employed to specifically avoid contact between the operator's hand and the saw blade.  This failure, and the subsequent failure to warn of the consequences of such contact, is hornbook negligence under prevailing Rhode Island law:

> We have recognized a duty in a seller of goods manufactured by another to warn purchasers of a dangerous defect in the product if the seller knows or has reason to know that the product poses a danger to consumers.  Incident to this duty to warn is a duty to acquire knowledge about the products through reasonably adequate inspections and tests.  In Rhode Island the failure to execute this duty will constitute actionable negligence.

*Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I. 1980) (citing *Ritter v. Narragansett Electric Co.*, 283 A.2d 255, 258 (R.I. 1971)).

Notwithstanding the foreseeability of the Plaintiff's injuries, Defendants' failure to test, and subsequent failure to warn, Defendants nonetheless contended that it was not feasible to test or warn for the specific occurrence that occasioned Plaintiff's injury—contact between the push stick and the saw blade.  In fact, as the Plaintiff alerted the Court at the summary judgment hearing, subsequent to his injury, although not produced in discovery in response to the Plaintiff's written discovery requests, the Defendant published a safety manual in which it did warn, presumably as a result of testing or experience, of the consequences of contact between the push stick and the blade of the saw.  Having specifically controverted the feasibility of testing for the particular occurrence that occasioned the Plaintiff's injury, the subsequent safety manual would be

2

admissible evidence in the trial of this matter as to the availability of precautionary measures under Fed. R. Evid. 407.[1]

In its Memorandum and Order granting Defendants' Motion for Summary Judgment, the Court did not have the full benefit of Bosch's revised Operating/Safety Manual (dated November 17, 2017), obtained by the Plaintiff on the heels of summary judgment, which, for the first time, warned as follows:



(Attached hereto as Exhibit A at p. 30).[2] At summary judgment, Bosch cited to its March 2011 Operating/Safety Manual (ECF 14-6) as providing the "on-product warnings and instructions

---

[1] While the First Circuit has suggested application of Rule 407 of the Federal Rules of Evidence where the federal court sits in diversity (*Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522 (1st Cir. 1991)), many academic commentators have concluded that State substantive evidence law on remedial measures such as the corresponding Rhode Island Rule of Evidence should apply in Federal Court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and Plaintiff believes that to be constitutionally correct and within the power of the Court to do justice. *See Flaminio v. Honda Motor Co.*, 733 F.2d 463, 471 (7th Cir. 1984) (Under *Erie*, courts are "constitutionally obligated to decide diversity cases in accordance with the rules of decisions prescribed by state law."); *id.* (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("Congress has no power to declare substantive rules of common law applicable in a State."); *see also* 84 A.L.R. Fed. 283, 4a ("Where the evidentiary question at issue was so closely linked to a state's substantive law that application of the Federal Rules of Evidence in such an instance would encourage forum shopping and would result in the inequitable administration of the law, the courts . . . held that the state rule should be followed in order to give effect to the state's substantive policy."). Plaintiff submits that, notwithstanding *Raymond*, that this view is, in fact, correct under the U.S. Constitution and that the Rhode Island Rules of Evidence on remedial measures should govern.

[2] On February 15, 2018, the Plaintiff served upon Defendant, Robert Bosch Tool Corporation, Interrogatories which included Interrogatory No. 7 seeking "any writings or warning on the product itself, on the packaging, or on anything attached or appended to the product when it left [their] control, . . . the

3

include[ing] warnings and instructions on when the components of the modular Smart Guard System [sic], proper rip cutting operation procedures, and when and how to use work helpers such as the push stick." ECF 13-1, at pp. 3-4. While the Court was not presented with the most current version of the Operating/Safety Manual, the Court was presented with the testimony of the Defendant's employee Wojciech Pierga who insisted (repeatedly) that the Defendants were aware that "push sticks are not intended to be contacting the saw blade" and such contact would be considered a "gross misuse" of the product. ECF 18-2, at p. 48:6-11.  Pierga also testified that he recalled six complaints regarding similar accidents. ECF 16-3 at p. 35:19-25. Indeed, Bosch's own technicians had encountered similar incidents. ECF at pp. 28:18-25; 29:1.

Despite that knowledge, the revised manual (dated three days before the Defendants were served with this lawsuit) was the first time that Bosch elected to warn its customers that Bosch considered such contact a "gross misuse" of the product which could result in serious personal injury. For Mr. Conway, that warning came two years too late. In conjunction with the evidence presented in Plaintiff's February 14, 2019 Objection to Defendants' Motion for Summary Judgment, this revised manual clearly creates a genuine issue of material fact regarding whether Bosch used reasonable care to discover the potential dangers of using the push stick.

The aforesaid circumstances justly warrant reconsideration of the Court's summary judgment ruling lest a manifest injustice be imposed upon the Plaintiff—a retired carpenter who is incapable of using his predominant hand.  This injustice should be corrected and the Plaintiff be given the opportunity to try these facts before a jury of his peers.

---

exact words used and their location," and "[i]f a warning was given in other words, attach copies of any and all symbols or depictions used." Defendant failed to provide the November 2017 revised Operating/Safety Manual.

# I. STANDARD OF REVIEW

"Rule 59(e) may properly be invoked to request a district court to reconsider, vacate, or even reverse its prior holding." *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123-24 (1st Cir. 1990) (the district court has the "power to amend its findings of fact and conclusions of law even when doing so result[s] in the reversal of its initial judgment"); Fed. R. Civ. P. 59(e). The First Circuit has established that the movant demonstrate that the motion is necessary to either correct "manifest error[s] of law" or fact upon which the judgment is based or "present newly discovered evidence." *E.g., Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citing *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 146 n.2 (1st Cir. 2004); *see also* 11 C. Wright et al., Federal Practice and Procedure § 2810.1 (2012); 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995).

Such "manifest error of law or fact justifies the trial court's grant of a Rule 59(e) motion." *Nat'l Metal Finishing Co.*, 899 F.2d at 124. Further, the court may "amend its factual findings as long as the amendments [are] supported by the evidence." *Id.* at 124, 129 (finding that there were "two permissible views of the evidence" and, thus, the district court "committed no abuse of discretion in withdrawing its initial opinion, amending its findings of fact and conclusions of law . . . and issuing the second opinion and judgment"). A motion for reconsideration may be granted "where the [c]ourt has overlooked matters . . . which might have materially influenced the earlier decision." *Motor Vehicle Mfrs. v. N.Y. State Dep't of Envtl. Conservation*, 831 F. Supp. 57, 60 (N.D.N.Y. 1993).

## II. ARGUMENT

**A. The uncontroverted evidence (to wit: the revised safety manual, Bosch's current and former employees' testimony regarding other similar complaints and their knowledge of push stick contact with the saw blade) create a genuine issue of material fact that Defendants' standard of care for testing was inadequate; reliance on the substandard was unreasonable; and the danger of the push stick was proximate cause of Mr. Conway's injury.**

1. <u>The standard of care followed by Defendants for testing was inadequate.</u>

This Court granted Defendant's original motion with respect to Mr. Conway's claim that Defendant was negligent in its design of the push stick because Mr. Conway failed prove Defendants "knew, or had reason to know, of a defective design or that [they were] negligent in failing to test or inspect the product prior to sale" and, thus, Mr. Conway failed to establish either a standard of care or Defendant's deviation therefrom. ECF at p. 9 (citing *Raimbeault v. Takeuchi Mfg. (U.S), Ltd.*, 772 A.2d 1056, 1063 (R.I. 2001)). Specifically, the Court noted that Mr. Conway provided **no** evidence "that the current standard of care is inadequate," or "that a standard different from that employed by Bosch would have revealed a latent defect in the push stick." ECF at pp. 9, 11 (emphasis supplied).

Plaintiff may set forth "evidence of customary practices in the industry" to establish a standard of care. *See* ECF 21 at p. 9 (citing *Scittarelli*, 415 A.2d at 1044). "Nevertheless, it generally can be presumed that defendant had to exercise reasonable care in the light of the apparent risks involved." *Id.* (citing 2 Restatement (Second) Torts § 402 at 345 (1965); Prosser, supra § 53); *see also Hall v. E. I. Du Pont de Nemours & Co.*, 345 F. Supp. 353, 361 (E.D.N.Y. 1972) (citing *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916); Rest. 2d Torts § 395 (1965) ("The general scope of such a duty is well established: manufacturers must provide products that are reasonably safe for their foreseeable use."). Although evidence of industry

6

custom may be instructive to establish a standard of care, adherence to an industry standard or custom is not conclusive. *See Keller v. United States*, 38 F.3d 16, 25 (1st Cir. 1994) ("proof of [the vessel owner's] adherence to an industry practice or custom is not dispositive on the issue of negligence"); *see also Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 190 (1st Cir. 1997) (testimony that referred to the "average [doctor]" and "prevailing medical standard" established the standard of care, but whether symptoms that showed a departure from normal or usual condition triggered a duty to inquire further became questions of fact **not properly resolved on summary judgment**) (emphasis added).

The evidence obtained by Plaintiff, after close of discovery, in the days preceding the Motion for Summary Judgment (though not produced by the Defendant in response to Plaintiff's discovery requests), along with the record evidence detailed in Plaintiff's Memoranda in Opposition to Defendant's Motion for Summary Judgment, set forth sufficient evidence to support Plaintiff's proposition that—in light of the apparent risks involved—Defendants' standard of care was inadequate. First, Defendant asserted that Underwriters Laboratories ("UL") is the industry and their own standard for testing, inspection, and certification. *See* ECF No. 14-2; *see also* ECF 16-2 at pp. 8:23-25; 9:1-4. This Court agreed with the Defendant that there was no record evidence "that industry or independent testing revealed propensity for the push stick to break in the way it did when [Plaintiff] was injured." ECF 21 at p. 7. But yet, before being served with the Plaintiff's lawsuit, Bosch elected to revise its Operating/Safety Manual (Exhibit A) to warn its customers that using the push stick in the same fashion as did the Plaintiff "may result in serious personal injury." Perhaps it was the knowledge of Bosch's employees (such as Wojciech Pierga) that contacting the blade with the push stick was a "gross misuse" of Bosch's product and that other customers (and Bosch technicians) had incurred similar incidents that resulted in the updates to the safety manual.

Whatever the cause, Defendants plainly had updated their testing or standards to discover the danger associated with contacting the blade with the push stick which standard or testing resulting in the revised warning. Why this testing or standard was not implemented prior to the Plaintiff's injury is a genuine issue of material fact at the heart of the Plaintiff's negligence and strict liability claims. The revised manual is circumstantial evidence of such a propensity and that manual (along with Mr. Pierga's testimony) certainly calls into question whether Bosch provided "products that are reasonably safe for their foreseeable use" (Restatement (Second) of Torts § 395 (1965)) and also belies the Defendant's purported reliance on the UL as furnishing the applicable standard as that standard was clearly disregarded (or upgraded) at some point resulting in the revision of the Operating/Safety Manual in November of 2017.

    2. <u>The standard of care followed by Defendants was inadequate and reliance upon such standard was unreasonable in light of the foreseeable danger of the push stick.</u>

As long established since *Ritter v. Narragansett Electric Co.*, if a product seller knows or has reason to know that the product is dangerous or likely to be dangerous, "failure . . . to inspect and test the [product] for defects constitutes actionable negligence." *Ritter v. Narragansett Elec. Co.*, 283 A.2d 255, 258 (R.I. 1971). Defendants have "reason to know" of a danger inherent in a product if their agents had "information from which a person of reasonable intelligence . . . would infer that the [product] would be dangerous to a user." *Id.* at 259 (considering that a jury could find that experienced salespersons and engineers had reason to know a product is likely to be dangerous when used). It is well established that under Rule 56, "reasonable inferences to be drawn [from the evidence adduced] must be construed in a light most favorable to the plaintiff"; thus, where there is evidence adduced that agents of the Defendant had reason to know of the danger, there remains a question of fact as to whether Defendant had reason to know the product would be dangerous to a user. *Id.*

8

Here, Defendants and their agents had reason to know of the danger posed by the subject push stick because after Mr. Conway's injury (but before service of this lawsuit), Defendants revised their safety manual to specifically warn of the dangers of the push stick. This evidence, when read in conjunction with the evidence already on the record, shows that Bosch had reason to know of the danger of the push stick. For example, Peter Domeny, the Director of Product Safety for Bosch from 1992-2009, oversaw the design of the push stick and conceded that the purpose of the push stick was to provide a safe distance between the operator's hand and blade and to "minimize risk of the hand getting in contact with the spinning saw blade." EFC 16-2 at pp. 7:19-25; 8:9-18. Mr. Domeny understood that Bosch's duty "is to test for all reasonably foreseeable situations" but explained as follows:

> There are jillions of possibilities how unreasonably a product can be treated. **You cannot test for all of those conditions.** There are too many of them, and the variety is too big.
>
> What you are required to do is to test your product under the reasonably foreseeable condition.
>
> And the last thing I want to say, whatever material you have, if you're going to be having a – some kind of an object in your hand, whether it's made out of the wood, or plastic, or a piece of steel, or whatever, if you're swinging it around the saw blade, and **you happen to strike a spinning saw blade, bad things are going to happen.**
>
> It doesn't matter whether you have this push stick, or a wooden push stick, or something else.
>
> Because if you take a wooden stick, and you jam it between the fence and a spinning saw blade, the wooden stick is going to be kicked back in the same way as the plastic push stick is going to kick back.
>
> And the end of the stick is going to be shoved into your hand if that happens. And if you have a wooden stick, it can fracture, and split longitudinally, and you may have a spear-like device that enters your hand.
>
> **It is something that we are aware of.**

Pierga Dep. at 39:12-40:13 (attached hereto as Exhibit B) (emphases supplied). Nonetheless, Mr. Pierga testified that the push sticks "are not designed for contact with the saw blade." *Id.* at 49:5-6.

Since use of the push stick is intended to minimize such risk, it is reasonably foreseeable that an object used to substitute for the hand has the same risk of slipping into the saw blade. Mr. Domeny also agreed that the push stick "has to be made out of such material that the blade is easily going to cut through" yet Bosch did not know if the blade could easily cut through the push stick because (1) Bosch did not know what kind of material the push stick was made of and (2) Bosch never tested to determine whether it can be cut easily by the saw. (ECF 16-2 at pp. 24:14-16; 25:16-25; ECF 18-1 at p. 88:4-6, 22-24.

Direct contact between the push stick and the saw blade was not only foreseeable by the Defendants, it was **known** to them. First, Defendants were familiar that in some cases, a plastic like Plexiglas "can shatter under the impact of the saw blade," but did not know what kind of material the push stick was made of and yet said that the subject push stick does not shatter. ECF 16-2 at 25:6-8, 16-25. Second, when asked if the push stick was designed to come into contact with the saw in lieu of the hand, Mr. Domeny as follows:

> [T]he specification of the push sticks are such that if for one, or other, or whatever reasons the push stick is going to slip, and—or **being scuffed by the saw blade, that that can happen, and the underwriter laboratory specifications says that because of these foreseeable misuse conditions** . . . the material of the push stick has to be such that it can be cut easily.

*Id.* at 23:11-25; 24:1-11 (Emphasis supplied). Mr. Domeny elaborated as to certain push stick kickback testing undertaken by Bosch but not the accident that befell the Plaintiff because that would be comparable to someone jumping onto the saw:

10

> MR. MACKIE: . . . You did not test the Bosch stick for fracturing when it's in this type of situation.
> MS. KNOWLES: Objection.
> MR. DOMENY: That's correct. Because the forces that the stick was designed for was forces that are necessary to push the material through the saw blade, and to oppose the kick-back forces. That's where the testing under the 500 Newton requirement is performed.
> 	That's why the 500 Newton force requirement is given to the push stick. That is a reasonably foreseeable misuse under which the stick is going to be used. It's going to be used, and potentially, the stick is going to have to absorb the 500 Newton force of a material being propelled by the saw blade in the case of kickback. We have tested it for that condition and it – it passed. There is no problem there.
> MACKIE: But you didn't – didn't test for this position we're talking about today?
> DOMENY: No, sir. I didn't test it also for somebody jumping on top of it. I didn't test for –
> MACKIE: I –
> DOMENY: -- a truck going through it. I didn't test it for a million things.

ECF 18-1 at 87:14-88:11.

Notably there was no evidence in the record that Bosch submitted the push stick to UL for certification and, indeed, it appears to have been UL that recommended a push stick resilient enough to withstand a saw contact kickback. Thus, contact between the push stick and saw blade "can happen" and is considered a "foreseeable misuse condition." Furthermore, when asked if "[he had] any knowledge or any idea or any reason to believe that this push stick is used to replace – are put in place of the human hand, when it's close to the blade, that it would, on occasion, accidentally come in contact with that blade," Mr. Domeny answered: "Yes. As I told you, it had happened to the technicians a number of times." *Id.* at 28:18-25; 29:1. Defendants had knowledge of or (at the very least) a reason to believe that the push stick would accidentally contact the blade.

Next, when Bosch's trained technicians tested the impact on the push stick from the force from cutting lumbar, the trained technicians on occasion contacted the push stick with the saw blade; yet, Bosch did no further testing for a more direct contact between the push stick and blade, which would be a more foreseeable contact for an average/layperson user than an experienced-

trained technician. ECF 16-2 at 26:7-9; ECF 18-1 at 87:10-17. Finally, again, Defendants were aware of at least six other incidents involving injuries resulting from using the plastic push stick. ECF 16-3 at 35:19-25.

However, because Defendants determined that there is no obligation to test for conditions they themselves find unreasonable, they conducted no meaningful testing for contact between the push stick and saw blade. ECF 18:1 at 89:9-20. Defendants' self-governing tactics are insufficient. Rather, whether the less than one second of contact Mr. Conway made between the push stick and blade was unreasonable or foreseeable is a question better left for a jury.

### 3. Defendants' negligence was the proximate—and only—cause of Mr. Conway's injury.

In its original decision, the Court concluded that a reasonable jury could not infer that Defendants' alleged negligence was the cause of Mr. Conway's injuries. *See* Court's Memorandum and Order at 9-10 (citing *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I. 1985). The Court relied upon a proposition developed in *Scittarelli* and echoed in *Thomas* that the Plaintiff relied upon mere happening of an event (the skin rash) to prove that a defect (some defect) was the cause of injury. *Scittarelli*, 415 A.2d at 1044 ("[t]he fact of the occurrence alone is inadequate proof of improper inspection and testing"); *Thomas*, 488 A.2d at 722 ("[T]o permit the jurors to infer from the circumstantial evidence in this case that there had to be something in the product that caused the injury is to permit them to engage in mere speculation.").

Here, no such inferential leaps are necessary as Bosch conceded that Mr. Conway was using a the Bosch Model 4100 when "[a]pproximately one second after hitting the power switch, Plaintiff heard a 'bang' noise and realized his right hand was injured." ECF 13-1, at p. 5. According to Mr. Domeny, the push stick should have been made of a material that could be cut easily upon contact. ECF 16-2 at 24:1-13. It was not made of any such material and Mr. Conway's

12

injuries stand as unfortunate confirmation of Mr. Domeny's advice. Mr. Pierga testified that there have been six similar incidents where customers complained of the push stick breaking upon contact with the saw blade. ECF 16-3 at 35:13-25. The Operating/Safety Manual now warns **"[c]ontacting the spinning saw blade with the push stick may result in serious personal injury**." Exhibit A at p. 30. Contact between the push stick and blade was foreseeable and the danger of this contact equally foreseeable.

In *Thomas*, the Court concluded that the rash on Plaintiff's skin could have been caused by the soap that was subject to the suit or "many other factors," such as something she ate, the sun, her lotion, detergent on her sheets, etcetera. *Thomas*, 488 A.2d at 722. Thus, in *Thomas*, Plaintiff failed to establish the "necessary proximate relationship" between the alleged negligence and the injury. *Id.* Mr. Conway, on the other hand, does not attempt to rely "solely on the mere happening of the accident to prove that a defect was the proximate cause of his injuries." ECF 21 at p. 10. Mr. Conway established the Defendants' willful blindness to the dangerous propensities of the push stick lead to a product that would foreseeably contact the saw blade and create a danger to the user. The Court should reconsider its determination that "Mr. Conway simply has not produced enough evidence to raise a genuine issue of fact about the cause of his injury." ECF 21, at 8.

**B. Bosch failed to warn of a danger that was reasonably foreseeable and of which Bosch knew or had reason to know.**

This Court granted Defendants' motion with respect to Plaintiff's claim that Defendants negligently failed to warn of the dangers of the push stick because Mr. Conway did "not [meet] his burden of proving that Bosch did not use reasonable care to discover the potential dangers of using the push stick." ECF 21 at p. 10. The Court noted that Mr. Conway merely offered a "bald assertion that [Defendant] should have tested the push stick differently," . . . but "advanced no alternative testing" standard. However, Mr. Conway offered evidence to establish that Defendants

13

had a "duty to acquire knowledge" about the "dangerous propensities" of the push stick through reasonable testing procedures.

The Court did recognize that "Bosch has a duty to warn if it knew or had reason to know of the dangerous propensities of the product which caused Mr. Conway's injuries." ECF 21 at p. 10. Again, Mr. Pierga testified regarding six incidents where customers complained of the push stick breaking upon contact with the saw blade. ECF 16-3 at 35:13-25. Mr. Pierga testified that such contact is a "gross misuse" of the push stick. ECF 18-2, 48:6-11. Mr. Domeny testified that the "material of the push stick has to be such that it can be cut easily" by the blade, but Bosch apparently never tested the push stick for contact with the blade to determine if the material could be cut through. *See* ECF 16-2 at 24:10-15. In fact, Domeny expressly acknowledged that push sticks can scuff the saw blade and that UL standards recognize this risk:

> [T]he specification of the push sticks are such that if for one, or other, or whatever reasons the push stick is going to slip, and—or **being scuffed by the saw blade, that that can happen, and the underwriter laboratory specifications says that because of these foreseeable misuse condition**s . . . the material of the push stick has to be such that it can be cut easily.

*Id.* at 16-2 at 23:11-25; 24:1-11 (emphasis supplied). However, Mr. Domeny testified that, during his tenure with Bosch, he did not test the product for this possibility:

> ATTORNEY MACKIE: But you didn't – didn't test it for this position we're talking about today?
> MR. DOMENY: No, sir. I didn't test it also for somebody jumping on top of it. I didn't test it for –
> MACKIE: I –
> DOMENY: -- a truck going through it. I didn't test it for a million things.
> MACKIE: Mr. Domeny, I'm not asking you – no one's jumping. I'm just asking you, did you test this push stick for an incident such as this, which I don't find to be totally out of the picture of an accident.
> MS. KNOWLES: Objection.
> MACKIE: All you have to answer is the question "yes" or "no". Did you test it for that, or not?
> KNOWLES: Objection.

> DOMENY: I have not tested it because of the reason I told you. You don't test for high – unlikely probability or probabilities that are not – or possibilities. They are not even probabilities. Possibilities that are – that can happen. Because we tested for something that is reasonably expected to occur during the use. We all know, from basic physic, that any material can be bowed to the point where it's going to rupture, and fail. So that is a known fact. There is no need to test for something that is a foregone conclusion.
>
> What there is a need to test for conditions that are likely to occur under the use. And those are the conditions described in the underwriter laboratory standard. Those are the conditions that an STP membership has decided, that those are the reasonable conditions to test for. Any and all other reasons – you can ask me why didn't you test it this way, or that way, or the end way. We didn't test those, because those are not reasonably foreseeable for – to occur during the use of the – of this device.

ECF 18-1 at 88:4-89:20.

Worse still, it was not until November of 2017 that Bosch revised its Operating/Safety Manual to warn that "**PUSH STICK: WARNING. Never contact the spinning saw blade with the push stick. Contacting the spinning saw blade with the push stick may result in serious personal injury**." *See* Bosch, Operating/Safety Instructions 30 (2017). Pursuant to Rule 407, Plaintiff may offer evidence of the feasibility of precautionary measures if feasibility is controverted. *See* Fed. R. Evid. 407; *see also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991); *Rollins v. Bd. of Governors for Higher Educ.*, 761 F. Supp. 939, 941 (D.R.I. 1991) ("if allowed as an exception to Rule 407, [the evidence] would be material and relevant," and thus, "not unfairly prejudicial under [Rule] 403."). "Remedial measure evidence proves feasibility of precautionary measures to the extent it shows defendant could have acted differently." 23 C. Wright et al., Federal Practice and Procedure § 5289 (2d ed. 2018). Rule 407 permits "evidence of a party's analysis of its product" and "[t]he fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted." *Prentiss & Carlisle Company, Inc. v. Koehring-Waterous Division Of Timberjack, Inc.*, 972 F.2d 6, 10 (1 Cir. 1992); *see also Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d

26, 33 (1st Cir.1988) (upholding admission of test of allegedly defective product even though test was used to plan voluntary recall of product following accident), *cert. denied*, 489 U.S. 1018, 109 S. Ct. 1135, 103 L. Ed. 2d 196.

In *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 9 (1st Cir. 1992), defendant conducted investigations that resulted in several "documents that pointed to the same cause of the fire as that posited by [plaintiff] at trial: contact between the throttle cable and solenoid." These documents included an interoffice memo and letter to customers stating the danger and advising customers to fix the issue. *Id.* The First Circuit affirmed the district court's holding that the documents discussing defendant's analysis of the problem, without mention to suggested remedial measures, were admissible because they were not considered "measure[s]" within the meaning of the rule. *Id.* at 9-10. Thus, documents that described the cause of the danger, "contact between the throttle cable and solenoid," were fully admissible and not limited by 407. *See id.*

Here, the New Manual is a record that (likely) reflects the results and conclusion of some test or inspection Defendants conducted and not solely a remedial measure. The warning in the new manual, much like the letter sent to customers in *Prentiss & Carlisle Co.*, is admissible under Federal Rule 407. *See id.* The warning in Defendants' new manual is a document produced as the result of Defendants' investigations or tests. The context of the warning, like the documents in *Prentiss & Carlisle Co.* reflects the conclusions of an investigation, namely, that "contacting the spinning saw blade with the push stick may result in serious personal injury." Exhibit A at p. 30.

This Court recognized in its previous decision that "incident to [the] duty to warn is a duty to acquire knowledge about the products through reasonably adequate inspections and tests." *See* ECF 21 at p. 10 (citing *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I. 1980)).

16

Evidence of such testing or inspections are those that Defendant conducted to come to the conclusion in the new manual that "[c]ontacting the spinning saw blade with the push stick may result in serious personal injury." Reasonable tests would have been tests that investigated Bosch's understanding that the push stick "has to be made out of such material that the blade is easily going to cut through." *Id.*; *see also* ECF 16-2 at p. 24:14-16. Whether Defendant had reason to know of the danger presented by the push stick—in light of newly discovered evidence presented amongst the other record evidence —is a question of fact for the jury. *See Ritter*, 283 A.2d at 258 (concluding it "was a jury question as to whether defendant Narragansett had reason to know that the chattel would be dangerous to a user").

As set forth in Section (A) *supra*, the Plaintiff met his burden of proving that Defendant did not use reasonable care to discover the potential and foreseeable dangers of using the push stick. Defendants had a duty to warn because it knew of the dangerous propensities of the push stick from prior incidents, from the inherent nature of the push stick—a safety tool used in lieu of the hand, from technicians who made contact with the blade, and from whatever feasible tests and inspections Defendants conducted to come up with its new warning. Defendants had reason to know of the dangerous propensities of the push stick, yet it chose to remain ignorant rather than acquire further knowledge of the danger posed to a user when the push stick makes contact with the saw blade.

## III. CONCLUSION

The November 2017 revised manual, when viewed along with the testimonial evidence originally presented during the summary judgment phase of this litigation, clearly establish a genuine issue of material fact as to whether Bosch knew or had reason to know of the dangerous propensities of the product which proximately caused Mr. Conway's injuries. For that reason, the

Plaintiff respectfully requests that the Court alter and amend its May 8, 2019 Judgment (ECF 22) and deny the Defendant's Motion for Summary Judgment (ECF 13) as to Plaintiff's design defect and failure to warn theories supporting Count I for Strict Liability and Count III for Negligence.

Dated: June 5, 2019                                   **EDWARD CONWAY**

                                                                             By his Attorneys,

/s/ William M. Dolan III
William M. Dolan III (#4524)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607
wdolan@apslaw.com

/s/ Stephen C. Mackie
Stephen C. Mackie (#1202)
Mackie & Reilly
681 Smith Street
Providence, RI 02908
Tel: (401) 521-4100
Fax: (401) 274-5433
Law681@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2019 I caused to be served via the Electronic Court Filing System (ECF) a true copy of the within document on counsel of record. The document has been filed electronically and it is available for viewing and downloading from the ECF system.

/s/ William M. Dolan III