UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EDWARD CONWAY,

           Plaintiff

v.

ROBERT BOSCH TOOL CORPORATION,
JOHN DOE 1 and JOHN DOE 2,

           Defendants

CIVIL ACTION NO. 1:17-CV-00572-JJM-PAS

**DEFENDANT ROBERT BOSCH TOOL CORPORATION'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF
ORDER GRANTING DEFENANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Robert Bosch Tool Corporation ("Bosch") submits this Opposition to Plaintiff's Motion for Partial Reconsideration of Order Granting Defendant's Motion for Summary Judgment.

**I. INTRODUCTION.**

After reviewing substantial briefing and hundreds of pages of exhibits and hearing oral argument from counsel, this Court issued a well-reasoned decision granting Bosch's motion for summary judgment. Plaintiff has hired new counsel and he now wants a do-over. Plaintiff asks the Court to conduct another full review and rehearing of every argument and every piece of evidence he previously presented (and then some) in support of his design defect and failure to warn theories supporting this strict liability and negligence claims. (ECF 26; ECF 26-1).[1] Plaintiff does not contend that the Court erred in granting Bosch's motion for summary judgment

---

[1] Plaintiff takes no issue with the Court's order concerning his breach of implied and express warranty claim (Count II). His stated challenge to the Court's order concerning his strict liability claim is therefore odd given that the Court's order on the strict liability and breach of implied warranty design defect claims is based on the same grounds. (*See* ECF 21 at 4-8). Further, Plaintiff's brief focuses entirely on negligence related issues (standard of care, adequacy of testing, what Bosch knew or should have known). It therefore appears that Plaintiff is only challenging the Court's order with respect to Plaintiff's negligence claims.

1

on the record before it. Instead, the linchpin of Plaintiff's motion for reconsideration is a 2017 Manual, which contains a warning that was not contained in the manual that accompanied the subject table saw and subject push stick at the time Plaintiff purchased them. Specifically, Plaintiff contends that the 2017 Manual, in conjunction with the evidence and arguments he unsuccessfully advanced during the summary judgment phase of the case, create genuine issues of material fact that warrant reconsideration of the Court's order.

The court should summarily reject Plaintiff's belated attempt to expand the evidentiary record to include the 2017 Manual because the 2017 Manual is not "newly discovered evidence" sufficient to warrant reconsideration. In any event, the 2017 Manual is not admissible evidence that the Court could consider on summary judgment. Finally, even if the Court were to consider the 2017 Manual, it does not provide a basis for the Court to alter and amend its judgment.

## II. BACKGROUND.

In this product liability action, Plaintiff alleged that in the course of using a Bosch Model 4100 table saw and component plastic push stick, he contacted the unguarded spinning saw blade with the push stick and the push stick broke into four pieces, one of which punctured the palm of his right hand. Plaintiff brought claims against Bosch for Strict Product Liability (Count I), Breach of Implied and Express Warranty (Count II), and Negligence (Count III). The undisputed evidence showed that the subject table saw and subject push stick were manufactured in April 2012 and that Plaintiff purchased the product from a Lowe's store in December 2012 or January 2013. (ECF 14 at ¶¶ 5, 14; ECF 14-3 at No. 3; ECF 14-2 at No. 4). The undisputed evidence further showed that the subject table saw and subject push stick were accompanied at the time of purchase by a manual dated March 2011 (the "Subject Manual"). (ECF 14 at ¶¶ 9, 12; ECF 14-6; ECF 14-8 at 42:22 – 43:9). All discovery closed in this matter on November 30, 2018.

On January 31, 2019, Bosch moved for summary judgment on all of Plaintiff's claims. (ECF 13). Bosch's motion for summary judgment was exhaustively briefed and argued by the parties. Bosch submitted three briefs. (ECF 13-1; ECF 16; and ECF 20). Plaintiff submitted two briefs, raising all of the legal and factual arguments he believed precluded summary judgment in Bosch's favor. (ECF 15-1; ECF 18). Plaintiff then had the opportunity to further oppose Bosch's motion for summary judgment at a lengthy hearing during which the Court was an active participant. (*See* Ex. A March 28, 2019 Hearing Transcript).

At the March 28, 2019 hearing, Plaintiff alerted the Court to the existence of the Bosch manual that currently accompanies Bosch Model 4100 table saws and their component push sticks, which is dated November (the "2017 Manual"), and noted push stick related information contained in the 2017 Manual that was not included in the Subject Manual. (Ex. A at 27:23 – 30:1). The Court was clear, and correct, when it advised Plaintiff that it could not consider the 2017 Manual "as of now" because it was not in the record. (Ex. A at 36:23 – 37:9). Despite the Court's advisement, Plaintiff did not seek to supplement the summary judgment record at the hearing or at any time before the Court issued its order granting Bosch's motion for summary judgment.

On May 8, 2019, after hearing oral argument and conducting a full review of the evidentiary record and briefs of the parties, the Court issued a comprehensive, well-reasoned memorandum and order granting Bosch motion for summary judgment in its entirety. The Court found that Plaintiff had not presented enough evidence to raise a genuine issue of material fact about crucial elements of each of his claims. (ECF 21 at 12). The Court thereafter entered judgment in Bosch's favor. (ECF 22).

### III. STANDARD OF REVIEW.

To obtain relief on a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). Because of the interest in finality and conservation of scarce judicial resources, "[t]he granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *See Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006); *BAC Home Loans Servicing LP v. Grassi*, No. 08-21085-JBH, 2011 WL 6096509, at *6 (B.A.P. 1st Cir. Nov. 21, 2011).

It is equally well established that a motion for reconsideration is not an opportunity for the moving party to rehash previously failed arguments or to introduce new arguments that could have been developed prior to judgment. *See Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) ("[a] motion for reconsideration is not the venue to . . . permit a party to advance arguments it should have developed prior to judgment; nor is it a mechanism to regurgitate old arguments previously considered and rejected"); *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 33 (1st Cir. 2012) ("[a] motion for reconsideration is not a vehicle for the introduction of arguments that could and should have been made to the district court earlier, nor may a party move for reconsideration on the basis of its own procedural failures."); *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (affirming denial of motion for reconsideration where movant "did no more than reiterate the arguments she earlier had advanced.").

## IV. ARGUMENT.

### A. The 2017 Manual Is Not "Newly Discovered Evidence" Sufficient to Warrant Reconsideration.

#### 1. Plaintiff Was In Possession Of The 2017 Manual Prior To The Court's Order.

While Rule 59(e) contemplates reconsideration based on newly discovered evidence, evidence that could have been presented prior to summary judgment is not "newly discovered" and cannot provide the basis for a motion for reconsideration. *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 931 (1st Cir. 2014). Plaintiff had the 2017 Manual in his possession at least by the time of the summary judgment hearing, yet he did not seek to supplement the summary judgment record at the hearing or in the <u>six weeks</u> between the hearing and the Court's order granting Bosch's motion for summary judgment. The Court need go no further to deny Plaintiff's motion for reconsideration. *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 29 (1st Cir. 2018) (finding that motion for reconsideration was properly denied where plaintiff "was in possession of the evidence she has now put forth" in her motion for reconsideration; court explained that "newly proffered evidence hardly qualifies as newly discovered evidence."); *see also Fragoso v. Lopez*, 991 F.2d 878, 887–88 (1st Cir.1993) (explaining that the district court was justified in denying a Rule 59(e) motion that relied on a newly submitted affidavit containing testimonial evidence that could have been submitted prior to the grant of summary judgment).

#### 2. Plaintiff Could Have Discovered The 2017 Manual With Reasonable Diligence During Discovery.

Similarly, a movant cannot prevail on a Rule 59(e) motion for reconsideration if the purportedly "newly discovered evidence" on which the movant relies could have been discovered with the exercise of reasonable diligence prior to entry of judgment. *BAC Home Loans Servicing LP v. Grassi*, No. 08-21085-JBH, 2011 WL 6096509, at *6 (B.A.P. 1st Cir.

5

Nov. 21, 2011). Here, Plaintiff acknowledges that the 2017 Manual has been available since November 2017 and he claims to have found it himself while shopping at a Lowe's store the day before the summary judgment hearing. (ECF 26-1 at 3; ECF 26-2; Ex. A at 27:25 – 28:5). Surely, with a straightforward request for production of documents, Plaintiff could have discovered the 2017 Manual before the close of discovery. But Plaintiff did not propound any document requests. Instead, he propounded a vague and ambiguous interrogatory concerning "writings" or "warnings" for "the product when it left your control." (*See* Ex. B, Bosch's Answers to Plaintiff's Interrogatories at Interrogatory No. 7). Bosch made clear through its objections and answer to the interrogatory that it was producing the manual for the subject table saw of which the subject push stick was a component part. (*Id.* at Answer No. 7).

If Plaintiff had truly been seeking the manual that accompanied the subject table saw as well as any subsequent revisions to the manuals that were provided with Bosch Model 4100 table saws, he could and should have asked for them directly. Alternatively, Plaintiff could have sought clarification after receiving Bosch's objections and answer to his interrogatory. Both would have been easy to do. Plaintiff did neither. Accordingly, the 2017 Manual is not "newly discovered" evidence that warrants reconsideration the Court's order granting Bosch's motion for summary judgment. *See Fisher v. Kadant, Inc.*, 589 F.3d 505, 512-13 (1st Cir. 2009) (affirming denial of motion for reconsideration where movants failed to show why they could not, in the exercise of due diligence, have obtained the proffered "new" evidence earlier).

Plaintiff failed to exercise reasonable diligence to discover the 2017 Manual during discovery and he failed to exercise reasonable diligence upon discovering the manual prior to entry of judgment in Bosch's favor. He can hardly be heard to complain now. *See Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994) ("Unlike the Emperor Nero, litigants cannot fiddle as

Rome burns").

### B. The 2017 Manual Is Not Admissible Evidence That Can Be Considered On Summary Judgment.

On a motion for summary judgment, the Court cannot consider evidence that is inadmissible at trial. *Vazquez v. Lopez-Roario*, 134 F.3d 28, 33 (1st Cir. 1998). As shown below, the 2017 Manual is inadmissible at trial. It therefore does not warrant reconsideration of the Court's order on Bosch's motion for summary judgment.[2]

#### 1. The 2017 Manual Is Inadmissible Under FRE 407.

A subsequent remedial measure is a measure that, if taken, would have made an early injury or harm less likely to occur. Federal Rule of Evidence 407.[3] The 2017 Manual upon which Plaintiff relies is a classic subsequent remedial measure under FRE 407. Indeed, the warning contained in the 2017 Manual is the very measure Plaintiff contends Bosch should have taken in 2012. ECF 26-1 at 4 ("For Mr. Conway, that warning came two years too late.").

FRE 407 prohibits admission of subsequent remedial measures to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. As the First Circuit has explained, the first objective of the rule is to avoid unfairly prejudicing the defendant by distracting the jury from the relevant time frame for its inquiry, namely whether the product was defective *at the time of manufacture and sale. Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991) (emphasis in original). The second objective is to further the

---

[2] The handwritten notes on the 2017 Manual are also inadmissible because they are hearsay. *Id*.

[3] The First Circuit as expressly held that "federal evidentiary rules govern in diversity cases." *Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F.3d 71, 74 (1st Cir. 1999); *see also Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 8 (1st Cir. 2011). More specifically for current purposes, the First Circuit has applied FRE 407 to a product liability diversity action such as the one at bar. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522–23 (1st Cir. 1991). Given this binding precedent, the Court must decline Plaintiff's invitation (ECF 26-2 at 3, fn. 1) to instead follow select academic commentators who have concluded that state evidentiary rules on remedial measures should apply in federal court diversity cases.

social policy of encouraging manufacturers to create safer products. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991).

While subsequent remedial measures may be admissible to show "feasibility of precautionary measures," this exception to the general rule "only applies if feasibility is controverted." *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991). Where the feasibility of a precautionary measure is not in dispute (e.g., where the defendant has stipulated to feasibility), the evidence is not admissible. *Id.*

Plaintiff contends that the 2017 Manual is admissible as to the feasibility of providing a warning because Bosch has contested the feasibility of testing or warning about contact between the push stick and the saw blade. (ECF 26-1 at 2-3). Plaintiff is simply wrong and cites to no record evidence of Bosch's purported contentions. In any event, Bosch, through undersigned counsel, stipulates that the push stick warning provided in the 2017 Manual was a feasible measure in 2012 when the subject push stick was manufactured and sold. Accordingly, the 2017 Manual is inadmissible under FRE 407. *See Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14 (1st Cir. 1994) (affirming exclusion of evidence of post-accident letters sent to purchasers of prosthetic legs at issue where defendant disagreed that the feasibility of the precautionary measure (giving instructions on torque measurements for proper use) was controverted and offered to stipulate as to feasibility).

> **2. The 2017 Manual Is Not Admissible Evidence Of Bosch's Analysis Of The Push Stick.**

Relying on *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6 (1st Cir. 1992), Plaintiff contends that the 2017 Manual is admissible because it "(likely) reflects the results and conclusion of some test or inspection Defendants conducted"

and was "produced as the result of Defendants' investigations and tests." (ECF 26-1 at 16). Plaintiff's reliance on *Prentiss & Carlisle Co.* is misplaced.

First, Plaintiff offers no record evidence that Bosch conducted any tests or inspection of the push stick that resulted in the 2017 Manual. The Court cannot base an evidentiary ruling of this magnitude on Plaintiff's assumption that such testing or inspection took place. Second, *Prentiss & Carlisle Co.* does not suggest that a subsequent remedial measure loses the protection of FRE 407 if it "likely" reflects the results and conclusion of testing or inspection. To the contrary, *Prentiss & Carlisle Co.* makes a distinction between a party's analysis of its product on the one hand and a subsequent remedial measure on the other hand. *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992). Moreover, Plaintiff's reading of *Prentiss & Carlisle Co.* would render FRE 407 meaningless if all a party had to do to admit a subsequent remedial measure was argue that it "likely" reflects the results and conclusion of investigations or tests. A proper reading of *Prentiss & Carlisle Co.* follows.

*Prentiss & Carlisle Co.* involved a timber harvesting machine that caught fire and was nearly destroyed. Shortly after the incident, employees of the defendant went to the fire site to investigate the cause of the subject fire, which included an analysis of the subject product. The investigation resulted in documents that pointed to the same cause of the fire as that alleged by Plaintiff. *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 9 (1st Cir. 1992).

The First Circuit held that "evidence of a party's analysis of its product" is admissible and is distinct from evidence of a subsequent remedial measure. *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992). The First Circuit further explained, "[t]he fact that the analysis may often result in remedial measures

9

being taken (as occurred here) does not mean that evidence of the analysis may not be admitted." *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992). The documents at issue in *Prentiss & Carlisle Co.* were found admissible because they "discussed only [defendant's] analysis of the problem, without mentioning any remedial measures suggested." *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Division of Lumberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992). In contrast, the 2017 Manual does not discuss any analysis of push stick testing conducted by Bosch and there is no evidence any such analysis or testing took place. Rather, the 2017 Manual is itself a subsequent remedial measure under FRE 407. It is therefore distinguishable from the documents deemed admissible in *Prentiss & Carlisle Co.*

### C. Even If The Court Were To Consider the 2017 Manual, It Does Not Provide Sufficient Additional Support to Save Plaintiff's Claims From Summary Judgment.

Plaintiff contends that the 2017 Manual, when viewed along with evidence in the summary judgment record that the Court found insufficient on its own, creates genuine issues of material fact that preclude summary judgment. (ECF 26-1 at 4, 6, 12, 13, 17). Plaintiff's contention is without merit as to both the liability and causation elements of his claims.

As an initial matter, Plaintiff's attempt to bolster his summary judgment filings by including in his motion for reconsideration additional record citations and more detailed explanations of the same arguments he previously and unsuccessfully made (ECF 26-1 at 9-15) should be summarily rejected as all of these arguments and records citations could have been presented during the summary judgment phase. *See Villanueva v. United States*, 662 F.3d 124, 128 (1st Cir. 2011) (affirming denial of motion for reconsideration that was based on "arguments [that] could and should have been presented in [plaintiff's] original request"). Worse, yet,

Plaintiff's attempted second bite of the apple continues to misrepresent the record on summary judgment.[4]

### 1. Liability.

With respect to liability, Plaintiff argues that the 2017 Manual, together with record evidence, creates genuine issues of fact concerning the relevant standard of care and what Bosch knew or should have known. (ECF 26-1 at 4, 6, 13, 17). Plaintiff's argument suffers from the very problem FRE 407 is meant to prevent. Bosch's knowledge and the standard of care by which it is to be judged must be measured at the time the subject push stick was manufactured and sold. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991). The subject push stick was manufactured in April 2012 and purchased by Plaintiff no later than January 2013. (ECF 14 at ¶¶ 5,14; ECF 14-3 at No. 3; ECF 14-2 at No. 4). The 2017 Manual is no evidence of

---

[4] A few such misrepresentations follow:

- Plaintiff claims there was no evidence in the record that Bosch submitted the push stick to UL for certification (ECF 26-1 at 11) despite ample evidence, which went undisputed on summary judgment, that Bosch not only submitted the push stick to UL for testing and certification but that the push stick was certified as having met all requirements. (ECF 14 at ¶¶ 7, 8; ECF 14-3 at Nos. 16, 17; ECF 14-9; ECF 14-10).

  Bosch also reminds the Court that in addition to complying with the established industry standard, Bosch performed use testing with the push stick, during which technicians contacted the blade with the push stick many times <u>without incident</u>, a fact Plaintiff fails to acknowledge. (ECF 16-2 at 16:5-11; 26:5-9; 28:16 – 29:15). Bosch also tested the push stick to ensure it met Bosch's internal flexibility requirement. (ECF 16-2 at 17:13-22).

- Plaintiff cites Mr. Domeny's testimony for the proposition that UL "recommended a push stick resilient enough to withstand a saw contact kickback." (ECF 26-1 at 11). Mr. Domeny testified as to no such thing. He testified that UL requires that the push stick be designed to oppose the forces created when the material the push stick is pushing through the saw blade is kicked back. (ECF 18-1 at 87:14 – 88:3).

- Plaintiff cites Mr. Pierga's testimony for the proposition that push stick "are not designed for contact with the blade." (ECF 26-1 at 10). This portion of Mr. Pierga's deposition (ECF 26-3) was not part of the summary judgment record and therefore should not be considered here. Moreover, Mr. Pierga clarified the quoted language as follows: "[Push sticks] are designed specifically in compliance with the Underwriter Laboratories standard for table saws for pushing the saw blade. They are not designed to contact the blade." (ECF 16-3, Errata Sheet at 49:2-6). This is consistent with the testimony of Mr. Pierga that was in the summary judgment record, "push sticks are not intended to be contacting the blade," a notion with which Plaintiff's counsel agreed. (ECF 18-2 at 48:6-10).

11

what Bosch knew or had reason to known as of 2012 or 2013.  Further, a 2017 Manual from a single manufacturer is no evidence of the relevant standard of care in 2012 or 2013.

Plaintiff is therefore left with the same evidence and arguments he advanced on summary judgment.  For the reasons stated in Bosch's summary judgment filings (ECF 13-1; ECF 14; ECF 16; ECF 20) and the Court's memorandum and order (ECF 21), that evidence is insufficient to establish liability on any of his claims.

### 2. Causation.

Plaintiff's argument that the 2017 Manual, together with record evidence, is sufficient to create a genuine issue of fact that Bosch's negligence was the proximate and only cause of Mr. Conway's injury (ECF 26-1 at 12) is equally unavailing.  Plaintiff argues that his own recollection of the accident, Mr. Domeny's testimony that a push stick should be made of a material that can easily cut by the blade, Mr. Pierga's testimony concerning six push stick incidents, and the 2017 warning concerning contact between the push stick and the blade, are sufficient to prove causation.  (ECF 26-1 at 12-13).  However, in so doing, Plaintiff grossly misrepresents the record evidence.  (ECF 26-1 at 12-13).  A proper reading of the record evidence offers no evidence of causation in this case.

As the Court has already found, Plaintiff's recollection of the accident is merely that he was moving the push stick from one side of the saw blade to the other, heard a bang, and discovered he was injured. (ECF 21 at 8; *see also* ECF 14 ¶¶ 28, 29; ECF 14-8 at 83:2-4; 83:12-15; 85:24 – 86:19; 108:7 – 109:6; ECF14-2 at No. 15).  Plaintiff did not see what happened to lead to his injuries and does not know how the push stick interacted with the blade and its surroundings or how or why it came to break. (*See* ECF 14 at ¶¶ 30, 31; ECF 14-8 at 86:4-22; 87:25 – 88:3; 108:15-18; ECF14-2 at No. 15; *see also* ECF 13-1 at 11-12).

There is no evidence, as Plaintiff contends, that the subject push stick was not made of a material that could be easily cut by the blade. (ECF 26-1 at 12-13). Nor is there evidence that the subject push stick broke because the blade could not cut through it. Mr. Domeny testified that because a push stick may inadvertently contact the saw blade, the material of the push stick must be such that the blade can easily cut through it …"[a]nd plastic is one of those materials." (ECF 16-2 at 23:19 – 25:13). While Mr. Domeny could not recall the precise composition of the plastic push stick at the time of this deposition, he knew it was a form of polystyrene, which does not shatter as a result of the saw blade cutting through it. (ECF 16-2 at 24:14 – 26:4). Mr. Domeny further testified that the blade did cut through the subject push stick and only stopped cutting when the push stick (which had kicked back after becoming jammed between the fence and the blade) accelerated to the velocity of the spinning blade and there was no more relative motion. (ECF 20-3 at 60:21 – 63:2; 65:24 – 68:21; 70:2 – 71:2; 72: 13 – 74:19; 80:15-25; 82:23 – 84:5 and Errata Sheet; *see also* ECF 20-5 at 9-11).

Similarly, Mr. Pierga did not testify, as Plaintiff contends, that there have been six similar incidents where customers complained of the push stick breaking upon contact with the saw blade. (ECF 26-1 at 13). Mr. Pierga testified that he is aware of six claims from table saw users involving a push stick, but not all of them involved a push stick that broke (ECF 16-3 at 35:7 – 36:11) and at least one of the claims involved a push stick with a different design than the subject push stick. (ECF 16-3 at 39:6-12 and accompanying Errata Sheet at 39:11-12). The subject push stick was manufactured in April 2012 and sold in December 2012 or January 2013. (ECF 14 at ¶¶ 5, 14; ECF 14-3 at No. 3; ECF 14-2 at No. 4). The existence of six push stick related claims of unestablished dates, unestablished circumstances, and unestablished push stick design is no evidence of defect or causation in a particular case (nor is it evidence as to Bosch's knowledge in

2012 or 2013). Likewise, the warning in the 2017 Manual that contacting the spinning saw blade with the push stick may result in injury is not evidence of causation in a particular case.

The case remains that Plaintiff has not provided a reconstruction of his accident. He has only show that an accident occurred, which is insufficient to survive a motion for summary judgment. *See Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I. 1985); *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1044 (R.I. 1980); *see also* ECF 21 at 8, 10; ECF 13-1 at 9-12; ECF 16 at 8-12; ECF 20.

### 3. Plaintiff's Failure To Warn Theories Fail As A Matter Of Law For The Additional Reason That No Reasonable Jury Could Conclude That A Failure To Warn Was Causally Related To Plaintiff's Injury.

During the summary judgment phase, Bosch argued that it was entitled to summary judgment on Plaintiff's failure to warn claims because no reasonable jury could conclude based on the record evidence that a failure to warn was causally related to Plaintiff's injury. (ECF 31-1 at 12-13). The Court did not need to (and did not) address this argument in its memorandum and order granting Bosch's motion for summary judgment. However, Bosch's argument provides an additional ground to deny Plaintiff's motion for reconsideration with respect to his failure to warn theories.

The undisputed evidence on summary judgment established that to the extent Plaintiff read any portion of the Subject Manual before using the subject table saw and subject push stick, his review was limited to looking at how to bolt the table saw to its stand. (ECF 14 at ¶ 17; ECF 14-8 at 43:10-20; 43:25 – 44:10).[5] Further, Plaintiff did not read any of the warnings or instructions affixed to the saw itself, and it was never his practice to read the manuals provided

---

[5] At the hearing on Bosch's motion for summary judgment, Plaintiff's counsel acknowledged that Plaintiff only "read the manual with respect to how to put the saw together. He didn't look at the manual for anything else." (Ex. A at 26:15-19).

14

with the table saws he used. (ECF 14 at ¶¶ 18, 19; ECF 14-8 at 47:15-20; 48:2-3). Indeed, as of the date of his accident, Plaintiff felt he could safely use a table saw without reading the manual. (ECF 14 at ¶ 20; EFC 14-8 at 43:21-24). Given these undisputed facts, no reasonable jury could conclude that Plaintiff would have read any additional warnings or that the absence of additional warnings was causally related to his injury.[6]

## V. CONCLUSION.

For the foregoing reasons, and those set forth in its briefs in support of its motion for summary judgment, Bosch respectfully requests that the Court deny Plaintiff's Motion for Partial Reconsideration of Order Granting Defendant's Motion for Summary Judgment and his related request that the Court alter or amend its judgment in Bosch's favor.

### LR Cv 7 REQUEST FOR ORAL ARGUMENT

Defendant requests the opportunity to present oral argument on its Opposition to Plaintiff's Motion for Partial Reconsideration and estimates that a total of 30 minutes will be sufficient.

---

[6] At the hearing on Bosch's motion for summary judgment, the Court inquired whether Rhode Island recognizes a heeding presumption with respect to warnings. Bosch has not found any case law in which Rhode Island state or federal courts have addressed a heeding presumption. However, to the extent any such presumption exists, the undisputed evidence would sufficiently rebut that presumption.

More generally, though, there is Rhode Island case law finding that a 'failure to warn' claim cannot succeed where the plaintiff fails to show causation. *See Hodges v. Brannon*, 707 A.2d 1225, 1227 (R.I. 1998) (affirming judgment for product manufacturer where plaintiff could not prove causation "even if the warnings and notices had been inadequate"); *see also Bartlett v. Pfizer, Inc.*, No. CA 11-254M, 2012 WL 718782, at *3 (D.R.I. Mar. 5, 2012) (dismissing product liability lawsuit where plaintiff failed to establish "any connection between [the] failure to warn and [plaintiff's] injuries.").

Respectfully submitted,

DEFENDANT,
ROBERT BOSCH TOOL CORPORATION

By its attorneys,


*/s/ Andrea Studley Knowles*
Andrea Studley Knowles (*pro hac vice*)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, Suite 900
Boston, Massachusetts 02114
(617) 227-3030 (Tel.)
(617) 523-4001 (Fax)
knowles@sugarmanrogers.com

and


*/s/ Mitchell R. Edwards*
Mitchell R. Edwards (#6942)
Hinckley Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000 (Tel.)
(401) 277-9600 (Fax)
medwards@hinckleyallen.com

DATED:  June 19, 2019

# CERTIFICATE OF SERVICE

I certify that on June 19, 2019, I electronically filed the foregoing document and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/ Andrea Studley Knowles*
Andrea Studley Knowles (*pro hac vice*)

4825-2424-1562, v. 2